UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BC POWER, INC.,

       Plaintiff,

v.                      Case No: 2:19-cv-803-FtM-29NPM

STUART C. IRBY COMPANY,

       Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's 12(c) Motion for Judgment on the Pleadings (Doc. #15) filed on December 9, 2019. Plaintiff filed a Response (Doc. #26) on January 6, 2020. For the reasons set forth below, the motion is granted.

**I.**

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. [ ] We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). See also Bankers Ins. Co. v. Fla. Residential Prop. &

Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998) (same).  The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answer, and exhibits thereto.  Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

## II.

In late 2014, Brooks & Freund, LLC (Brooks) entered into a contract to serve as the general contractor on a construction project by Orchid Run Apartments, LLC.  Plaintiff BC Power, Inc. (BC Power), an electrical contractor, executed a subcontract agreement with Brooks in December 2014 in which it agreed to perform certain work at the Orchid Run Apartments project.  To perform the work covered by the subcontract, BC Power obtained electrical materials from an electrical supplier, defendant Stuart C. Irby Company (Irby).  Pursuant to a written Application for Credit and Billing Information, Irby extended credit to BC Power on an open account to purchase materials.  Brooks did not fully pay BC Power for the subcontract work, having an unpaid principal amount exceeding $685,000.  BC Power in turn did not fully pay Irby for its materials, having an unpaid principal amount exceeding $46,000.

On or about February 24, 2016, BC Power, by its CEO Michael B. Collins, executed an Assignment of Accounts Receivable (the Assignment) in favor of Irby.  The Assignment transferred to Irby,

as the sole owner "forever, all of its right, title and interest in and to the Accounts Receivables" owed to BC Power by Brooks on the Orchid Run project. (Doc. #3, Exh. A.)  At the time, the amount of the receivables owed to BC Power was in excess of $685,000.

## A. Previous Case

On March 18, 2016, Irby (as assignee) filed a Complaint against Brooks and Western Surety Company (Western) in federal court.  See Stuart C. Irby Co. v. BC Power, Inc., Case No. 2:16-cv-211-FTM-29CM, Doc. #1 (M.D. Fla.).[1]  Federal jurisdiction was premised on diversity of citizenship.  28 U.S.C. § 1332(a).

On July 8, 2016, Irby filed a Second Amended Complaint (Id., Doc. #17), which became the operative pleading, adding BC Power as a defendant.  Irby brought the following claims in the Second Amended Complaint:  (1) a claim against Brooks for unjust enrichment based on the electrical materials furnished by Irby to BC Power (Claim No. 1); (2) a claim against Western and Brooks for payment under a surety payment bond (Claim No. 2); (3) a claim against Brooks for breach of the BC Power subcontract (Claim No. 3); and (4) a claim against BC Power for breach of a Credit

---

[1] The Court takes judicial notice of the contents of this previous case, over which the undersigned was also the presiding judge.  See Fed. R. Evid. 201(b)(2); Fla. Bd. of Tr. v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975) ("It is not error [ ] for a court to take judicial notice of related proceedings and records in cases before that court.") (citations omitted).

Agreement (Claim No. 4). (Id., Doc. #17.) Brooks filed a Crossclaim against BC Power for breach of the subcontract between Brooks and BC Power. (Id., Doc. #25.) BC Power filed a Partial Answer and Affirmative Defenses (Id., Doc. #33) to the Crossclaim, and an Answer an Affirmative Defenses (Id., Doc. #39) to the Second Amended Complaint which, among other things, admitted the attached Assignment. (Id. ¶¶ 26-27.)

On November 29, 2016, BC Power filed an Emergency Motion to Set Aside Assignment. (Id., Doc. #51.) The Emergency Motion correctly asserted that the effect of the Assignment was to assign BC Power's entire interest in the $685,000 account receivables to Irby when BC Power only owed Irby about $46,000. Brooks and Western opposed the motion to set aside the assignment. (Id., Doc. #53).

On January 9, 2017, the Court issued an Opinion and Order denying the motion, stating in part:

> BC Power seeks to set aside as void or voidable the Assignment of Accounts Receivable based upon lack of consideration, unconscionability, fraud in the inducement, and mistake. Irby and Western respond that BC Power's motion is an improperly supported quasi-motion for summary judgment and that BC Power has waived these arguments by failing to assert them as affirmative defenses in its Answer and has not otherwise raised them as claims against Irby in this case. The Assignment of Accounts Receivable (Doc. #17-6) is governed and construed under Mississippi law according to its terms.

- 4 -

> The Court agrees that procedurally BC Power's arguments are improperly raised and out of time. Rather than file a counterclaim against Irby or state its defenses as affirmative defenses in its Answer, BC Power filed a motion to rescind the Assignment and set it aside. By failing to assert their defenses to Irby's claim for relief in their Answer, BC Power waived these affirmative defenses and the time to amend pleadings has long since passed. <u>See</u> Fed. R. Civ. P. 8(c), 12(b). The Court declines to construe the filing as a motion to dismiss as BC Power submits matters outside the pleadings for the Court's consideration and otherwise the motion was not made before BC Power filed its Answer. See Fed. R. Civ. P. 12(b).

(<u>Id.</u>, Doc. #61, pp. 3-4.)

On February 6, 2017, plaintiff Irby filed a Motion for Voluntary Dismissal (<u>Id.</u>, Doc. #64) of claims against Western and Brooks based upon settlement with those two defendants.[2]  BC Power opposed the motion, asserting that Irby was required by the Assignment to assume the receivables for BC Power's benefit and interest, which it had not done.  (<u>Id.</u>, Doc. #65.)  On March 9, 2017, the Court permitted the voluntary dismissal with prejudice of Irby's claims against Western and Brooks, stating:

> BC Power argues that it will be prejudiced if Brooks and Western are dismissed from this case because BC Power "has been told by the other parties that it will not receive any of the settlement proceeds.  BC Power will be left with nothing and no legal remedy in the present suit." (Doc. #65 at 3.)  Yet, based upon the Assignment (Doc. #17-6, Exh. 6,

---

[2] It appears Irby settled with Brooks and Western for $40,000, paid by Brooks.  (<u>Id.</u>, Doc. #75-1, ¶ 11.)

Assignment of Accounts Receivable), all rights, title, and interest to the amounts owed to BC Power on the accounts receivable was assigned to Irby, and there is nothing indicating – and BC Power does not argue – that Irby could not settle the BC Power's claims with Brooks and Western. Although BC Power believes that Irby has acted in contradiction of the parties' intentions in entering in the Assignment and that Irby has otherwise acted against BC Power's interests, as the Court noted in its previous Opinion and Order, BC Power could have raised these arguments by filing a counterclaim against Irby or stating its defenses as affirmative defenses in its Answer, which BC Power has failed to do.[2] (Doc. #61 at 3.)

BC Power further argues that if this Court allows dismissal of Brooks and Western, BC Power's claims against Brooks will be extinguished as Irby is attempting to settle BC Power's claims against Brooks relating to the amounts owed by Brooks to BC Power to the detriment of BC Power. The Court is unaware of any claim by BC Power against Brooks for any amounts owed, presumably because any such claim was assigned to Irby. Thus, BC Power has failed to establish that it will lose substantial rights as a result of a Rule 41(a)(2) voluntary dismissal.

---

2 The Court is aware that BC Power has filed a motion for leave to amend its answer and add a counterclaim against Irby (Doc. #66), but dismissal of Brooks and Western will not prejudice BC Power's request to amend.

(Id., Doc. #69, pp. 4-5.) A Judgment (Id., Doc. #70) dismissing the case with prejudice as to Brooks and Western was filed on March 9, 2017.

As the Court had noted, BC Power had filed a Motion for Leave to File Amended Answer (Id. Doc. #66), stating in part:

> Should the Assignment remain in place, justice will not prevail. BC POWER's counsel has learned that IRBY and B&F have reached a settlement agreement, failing to provide any proceeds to BC POWER. On good faith and belief, IRBY used BC POWER's $685,000.00 of receivables as leverage in order to receive payment on their $46,000.00 principal, due and owing. In short, IRBY bargained away BC POWER's receivables for pennies on the dollar, in direct conflict with their prior assurances to protect BC POWER's interests against B&F. B&F also has unjustly benefitted, realizing a $600,000.00+ windfall/cost savings as to what they truly owe BC POWER. BC POWER will be left with nothing and no legal remedy in the present suit.

(Id., Doc. #66, p. 3.) A magistrate judge recommended denial of the motion, and on March 29, 2017, the Court adopted the findings of the Magistrate Judge's Report and Recommendation, and denied leave to file an amended answer, stating in part:

> After conducting an independent examination of the file and upon due consideration of the Report and Recommendation, the Court accepts the Report and Recommendation of the magistrate judge. The Court agrees that BC Power, Inc. failed to show good cause to amend at this late stage of the proceedings, and reaffirms the January 9, 2017 Opinion and Order (Doc. #61, p. 3) finding that "BC Power waived these affirmative defenses and the time to amend pleadings has long since passed."

(Id., Doc. #74, p. 2.)

On April 10, 2017, Irby filed a Motion For Summary Judgment Against BC Power, Inc. (Id., Doc. #75) seeking recover of the

balance due on the materials Irby had supplied to BC Power, less the $40,000 settlement amount from Brooks and Western. BC Power filed a Response in Opposition (Id., Doc. #79) asserting that summary judgment should be denied because the Assignment had been obtained by fraud.

While the summary judgment motion was pending, Irby and BC Power filed a Joint Motion of Stipulated Judgment Against BC Power, Inc. (Id., Doc. #77) in which they stipulated to the form of a final judgment. The proposed final judgment set forth the agreed-upon dollar amount, stated that "the principles of res judicata and collateral estoppel apply with respect to this [stipulated] judgment", and required the Court to retain jurisdiction. The Court was not inclined to retain jurisdiction and had concerns about the appropriateness of the collateral estoppel/res judicata language given the stipulated nature of the proposed final judgment. (Id., Doc. #78.) The parties were requested to notify the Court as to their positions on these two matters. On May 15, 2017, the Court denied the joint motion because the parties were not in agreement as to the need for the collateral estoppel/res judicata language. (Id., Doc. #82, p. 2.)

On December 5, 2017, the Court issued an Opinion and Order on the pending summary judgment motion. The Court granted summary

judgment in favor of Irby, awarding $6,145.05 in principal[3], $8,875.37 in service charges, plus interest, for a total of $15,295.71. The request for attorney's fees was denied. (<u>Id.</u>, Doc. #85.) In relevant part, the Court stated:

> BC Power argues that Irby is not entitled to summary judgment because there is a material question as to whether Irby is entitled to recover any amount of the unpaid principal balance. Specifically, BC Power asserts that Irby expressly agreed, and owed a duty to BC Power, to recover the full amount of the accounts receivables from Brooks, which were the subject of the Assignment. BC Power further asserts that Irby assumed a fiduciary-type role by agreeing to protect BC Power's interest and to fight for full recovery of the receivables. BC Power asserts that because the settlement was a breach of this obligation, it does not owe any money to Irby (and Irby owes BC Power money). (Doc. #79, p. 3.)
>
> BC Power's arguments are without merit because the Assignment creates no such obligation or fiduciary-type relationship between BC Power and Irby. The Assignment states that it is governed by Mississippi law (Doc. #17-6, ¶6), which provides the following with regard to the interpretation of a contract:
>
>> First, we must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written. [ ] In making that determination, the Court must review the express wording of the contract as a whole. [ ] If the contract is unambiguous, "the

---

[3] This amount was based on the remaining balance of the $46,145.05, after subtracting a $40,000 amount gained from a settlement with Brooks and Western. (Case No. 2:16-cv-211-FTM-29CM, Doc. #85, p. 8.)

intention of the contracting
parties should be gleaned solely
from the wording of the contract"
and parole evidence should not be
considered. [ ] This Court must
"accept the plain meaning of a
contract as the intent of the
parties where no ambiguity exists."
[ ] "'An instrument that is clear,
definite, explicit, harmonious in
all its provisions, and is free from
ambiguity' will be enforced." [ ]

"The mere fact that the parties
disagree about the meaning of a
provision of a contract does not
make the contract ambiguous as a
matter of law." [ ] "Where the
contract is unambiguous, the
'parties are bound by the language
of the instrument.'" [ ] Courts
should not alter the terms of a
valid contract. "The right of
persons to contract is fundamental
to our jurisprudence and absent
mutual mistake, fraud [,] and/or
illegality, the courts do not have
the authority to modify, add to, or
subtract from the terms of a
contract validly executed between
two parties." [ ] "With limited
exceptions, persons enjoy the
freedom to contract. When they do,
they are bound by the terms of their
contracts."

Epperson v. SOUTHBank, 93 So. 3d 10, 16-17
(Miss. 2012) (internal citations omitted).
In a summary judgment case, Mississippi
advises that the reviewing Court "should
determine only whether the contract is
ambiguous." Id. at 17. If the terms are
ambiguous, then the case must be submitted to
the trier of fact and summary judgment denied.
Id.

The Assignment (Doc. #17-6) in this case is
not ambiguous. The Assignment is clear that

the intention of the parties was not to create any type of fiduciary relationship or obligation toward BC Power. BC Power transferred the accounts receivables, i.e., it "grants, sells, conveys, assigns, transfers, and delivers" those receivables to Irby. (Doc. #17-6, ¶ 2.) This transfer was "forever." (Id.) The transfer involved "all of its right, title and interest in and to the Accounts Receivables". (Id.) Thus, BC Power retained no interest of any kind in the receivables, and there were no restrictions on what could be done with the accounts receivables. Additionally, BC Power recognized that the assignment did not relieve BC Power of any of its obligations to Irby. (Id. at ¶ 5.) In light of the clear and unequivocal language of the Assignment, the parole evidence from Bruce Collins is not, and cannot be made, admissible.

The Court finds that Irby is entitled to summary judgment on its claim and to recover from BC Power. Only the amount of recovery need be determined. BC Power does not address, and therefore does not dispute, the amounts.

(Id., Doc. #85, pp. 4-7) (footnote omitted). Judgment (Id., Doc. #86) was filed on December 5, 2017. The Court denied plaintiff's Motion to Alter or Amend to provide for attorney's fees. (Id., Docs. #87, #88.) No appeal was filed by either party.

## B. Current Case

The current case was filed in state court and removed to federal court based on diversity of citizenship jurisdiction. BC Power's Complaint (Doc. #3) challenges the validity of the Assignment, asserting claims based on claims of fraud, fraudulent inducement, and fraudulent misrepresentation. BC Power alleges

that Irby falsely represented to BC Power that Irby would protect BC Power's interests and recovery efforts for the full sum of the account receivables, less the monies owed by BC Power to Irby. BC Power alleges that this was a false representation of material fact and was made to induce BC Power and Collins to execute the Assignment. BC Power alleges it was ignorant of the legal effect and content of the Assignment, and never would have executed the Assignment had it known Irby was not going to perform on the representation. BC Power seeks to invalidate the Assignment, and asserts that Irby now owes it the remainder of the accounts receivable previously due and owing from Brooks.

Irby filed an Answer and Affirmative Defenses (Doc. #5) asserting, in relevant part, that the Complaint is barred by *res judicata* and/or collateral estoppel based on the proceedings in the previous federal case.

### III.

Irby argues that the Complaint in the current case is barred by res judicata (also known as claim preclusion) because BC Power's claims center on whether the Assignment was valid, a claim already evaluated and rejected in a prior federal case. (Doc. #15, pp. 2-11.) Irby also asserts that the current case is barred by the doctrine of collateral estoppel (also known as issue preclusion)

because the issue of the validity of the Assignment was decided in the prior federal case. (Doc. #15, pp. 12-15.)

"Res judicata is often analyzed as two separate components: claim preclusion and issue preclusion." Woodson v. Eleventh Judicial Circuit in & for Miami Dade County, FL, 791 F. App'x 116, 119 (11th Cir. 2019). As the Supreme Court has stated:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. Id., at 748–749, 121 S. Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

<u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008)(footnote omitted).

**A. Res Judicata - Claim Preclusion**

**(1) Legal Principles**

The first issue is whether the Court applies federal or state law to determine the preclusive effect of an earlier judgment of a federal court which had exercised diversity jurisdiction. "The preclusive effect of a federal-court judgment is determined by federal common law." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 891 (2008) (citing <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 507–509, (2001)). <u>Semtek</u> made clear, however, that while "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity," federal common law should be derived from "the law that would be applied by state courts in the State in which the federal diversity court sits." <u>Id.</u>, 531 U.S. at 508. Generally, "[w]hen exercising diversity jurisdiction, we apply the state law of res judicata in which the federal diversity court sits." <u>Aning v. Fannie Mae</u>, 754 F. App'x 816, 818 (11th Cir. 2018) (citing <u>Semtek</u>). However, "[t]his federal reference to state law will not obtain [ ] in situations in which the state law is incompatible with federal interests." <u>SFM Holdings, Ltd. v. Banc of Am. Sec., LLC</u>, 764 F.3d 1327, 1336–37 (11th Cir. 2014) (citing <u>Semtek</u> 531 U.S. at 509). There is no

such incompatibility in this case, and therefore the Court applies Florida claim preclusion principles.

Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c). As an affirmative defense, the burden is upon the party asserting the defense to show the required prerequisites are satisfied. In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). Thus, in this case the burden is upon Irby to establish its claim preclusion defense.

Fortunately, "[a] comparison between Florida rules and federal rules governing claim and issue preclusion reveals that the relevant principles are largely identical." SFM Holdings, Ltd., 764 F.3d at 1337 (citations omitted). In this case, both parties agree (Docs. #15, p. 9; #26, pp. 6-7) to the four components of *res judicata* which govern this case: "Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (citation omitted). See also Fla. DOT v. Juliano, 801 So. 2d 101, 105 (Fla. 2001). "If all four elements are met, 'the judgment or decree upon the merits in the first case is an absolute bar to the

subsequent action or suit between the same parties not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every claim which might have been presented.'" Rivas v. Bank of N.Y. Mellon, 777 F. App'x 958, 963 (11th Cir. 2019) (quoting In re Justice Oaks II, Ltd., 898 F.2d 1544, 1552 (11th Cir. 1990)) (alterations adopted) (internal quotation marks omitted).

### (2)   Application of Res Judicata to Present Case

### (a)   Final Judgment on the Merits

For res judicata purposes, there were two final judgments entered in the previous case.  The Court entered a final judgment dismissing the case with prejudice as to Brooks and Western based upon their settlement with Irby.  (Stuart C. Irby Co. v. BC Power, Inc., Case No. 2:16-cv-211-FTM-29CM, Doc. #70.)[4]  The Court also issued a final judgment in favor of Irby and against BC Power on Irby's motion for summary judgment as to the count relating to the balance due under the Credit Agreement. (Id., Doc. #86.)

> "'[A] dismissal with prejudice is deemed an
> adjudication on the merits for the purposes of
> res judicata,' Anthony v. Marion Cty. Gen.
> Hosp., 617 F.2d 1164, 1170 (5th Cir. 1980) .
> . . . Additionally, 'disposition of a case on
> summary judgment grounds represents a final

---

[4]Under res judicata principles, "consent judgments ordinarily support claim preclusion but not issue preclusion." Arizona v. California, 530 U.S. 392, 414 (2000), supplemented, 531 U.S. 1 (2000) (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 384–385 (1981)).

adjudication on the merits' and 'forecloses subsequent litigation on the matter.' <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 n.4 (11th Cir. 1985)."

<u>DeBose v. Ellucian Co., L.P.</u>, 19-11701, 2019 WL 7288758, at *3 (11th Cir. Dec. 30, 2019).  The Court finds that both of these are final judgments on the merits for *res judicata* purposes.

**(b)  Court of Competent Jurisdiction**

Both federal and Florida law require that the final judgment on the merits be from a court of competent jurisdiction.  <u>Aquatherm Indus., Inc. v. Florida Power & Light Co.</u>, 84 F.3d 1388, 1393 (11th Cir. 1996).  The Court issuing the final judgments in the previous case had subject matter jurisdiction based on the diversity of citizenship and an amount in controversy in excess of $75,000.  28 U.S.C. § 1332(a).  Thus, the Court finds that the previous case was decided by a Court of competent jurisdiction.  Neither party asserts otherwise.

**(c)  Identical Parties**

Under res judicata principles, a claim is barred by earlier litigation if both cases involve identical parties or those in privity with them.  <u>Ragsdale</u>, 193 F.3d at 1238.  "'Privity' describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty."  <u>Hart v. Yamaha-Parts Distributors, Inc.</u>, 787 F.2d 1468, 1472 (11th Cir. 1986).

The previous case was brought by Irby as assignee of BC Power against Brooks and Western, and was brought by Irby against BC Power directly under the Credit Agreement. The current case was brought by BC Power against Irby challenging the Assignment. The parties are identical for res judicata purposes.

**(d) Same Cause of Action**

The Eleventh Circuit

> has used a variety of labels to describe the methods by which we judge the similarity of two causes of action. Compare <u>NAACP v. Hunt</u>, 891 F.2d 1555, 1561 (11th Cir. 1990) (noting that the "principle test" for comparing cases involves inquiry into the primary rights and duties implicated) with <u>In re Atlanta Retail, Inc.</u>, 456 F.3d 1277, 1288 (11th Cir. 2006) (examining whether cases involve "the same nucleus of operative fact") and <u>In re Piper Aircraft</u>, 244 F.3d at 1296–97 (noting that claims are the same "when they arise out of the same transaction or series of transactions"). Nothing in our jurisprudence suggests that any meaningful analytical difference derives from the label we affix to the method of comparison. <u>See, e.g.</u>, <u>Ragsdale</u>, 193 F.3d at 1239 & n.8 (concurrently reciting all three of the above labels in describing our comparative approach).

<u>Borrero v. United HealthCare of N.Y., Inc.</u>, 610 F.3d 1296, 1308 (11th Cir. 2010). The Court went on to say that "the general analytical method in our cases involves not an explicit transactional approach but an evaluation of any commonality in the 'nucleus of operative facts' of the actions. . . . Rather than attempting to define the 'transaction' at issue in the first case,

we line up the former and current cases side-by-side to assess their factual similarities." Id. "In short, in order to determine whether two cases involve the same cause of action for res judicata purposes, we are obliged to look at the common nucleus of operative fact and ask what legal theories were used or could have been employed in the first proceeding." Maldonado v. U.S. Atty. Gen., 664 F.3d 1369, 1377 (11th Cir. 2011) (citing Ragsdale, 193 F.3d at 1238–39).

Here, the claims in the previous case by Irby against Brooks and Western were dependent on the validity of the Assignment. Without the Assignment, Irby had no standing to sue either Brooks or Western on the causes of action it asserted. The Court rejected BC Powers' first three attempts to challenge the validity of the Assignment. (Case No. 2:16-cv-211-FTM-29CM, Docs. ## 61, 69, 74.) On BC Powers' fourth attempt, the Court considered the merits of the Assignment issue and denied BC Powers' argument. (Id. Doc. #85.) The Court finds that Irby has established that the two cases involved the same cause of action for res judicata purposes.

Because Irby has established all elements of res judicata, BC Power is precluded from pursuing its claims in this second action. Accordingly, its complaint will be dismissed with prejudice.

## B. Collateral Estoppel - Issue Preclusion

Alternatively, Irby asserts that collateral estoppel precludes this second federal case because the first case decided the issue which BC Power now asserts. The Court agrees.

### (1) Legal Principles

Resolution of whether federal or state law applies to collateral estoppel assertions has had a checkered past in the Eleventh Circuit. See <u>CSX Transp., Inc. v. Gen. Mills, Inc.</u>, 846 F.3d 1333, 1335 & 1338 (11th Cir. 2017) (clarifying "discordant" case law on in light of <u>Semtek</u>). It is now established that "federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction." <u>Id.</u> at 1340.

Estoppel of any sort is an affirmative defense. Fed. R. Civ. P. 8(c). As an affirmative defense, the burden is upon the party asserting the defense to show the required prerequisites are satisfied. <u>In re Piper Aircraft Corp.</u>, 244 F.3d at 1296. Thus, in this case the burden is upon Irby to establish its issue preclusion defense.

"Under the doctrine of issue preclusion, 'a prior judgment . . . foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" <u>Herrera v. Wyoming</u>, 139 S. Ct. 1686, 1697 (2019) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742,

748-749 (2001)).  The elements of collateral estoppel are well-established in the Eleventh Circuit and Florida:

> Issue preclusion—or "collateral estoppel"—precludes a litigant from relitigating an issue that was actually litigated in an earlier action to a final judgment between the same parties, provided that the issue in both proceedings is in fact the same. See B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1302-03, 191 L. Ed. 2d 222 (2015) (explaining the elements of issue preclusion); see also Pearce v. Sandler, 219 So. 3d 961, 965 (Fla. 3d DCA 2017) ("[C]ollateral estoppel, also known as issue preclusion, applies where: (1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding.") (citation omitted).

Martinez v. Mkt. Traders Inst., Inc., 757 F. App'x 815, 817 (11th Cir. 2018).  See also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1036 (11th Cir. 2014).

**(2)  Application of Collateral Estoppel Principles**

**(a)  Identical Issues**

Even if the two cases do not involve the "same claims" for res judicata principles, Irby has established that collateral estoppel applies to bar the current case.  For collateral estoppel principles the Court may consider only the final judgment on the motion for summary judgment, since the prior consent judgment will

not support issue preclusion.  <u>Arizona v. California</u>, 530 U.S. at 414.  As discussed earlier, that summary judgment order resolved the challenge to the Assignment as asserted by BC Power.

**(b)  Identical Parties**

The parties to the two cases were obviously identical.

**(c)  Full and Fair Opportunity & Critical and Necessary**

In opposing that summary judgment motion, BC Powers asserted that Irby was not entitled to summary judgment or any money because the Assignment was invalid and obtained by fraud.  BC Powers had a full and fair opportunity to litigate this issue, having briefed the issue as it saw fit.  This issue was necessary and critical to the determination of Irby's entitlement to summary judgment, and the amount owed.

**(d)  Actually Litigated**

The Court decided the Assignment issue against BC Powers, and granted summary judgment in favor of Irby.

Irby has therefore established that all the elements of collateral estoppel are present in this case.  Accordingly, even if res judicata does not apply, Irby is entitled to relief under collateral estoppel principles.

Accordingly, it is hereby

**ORDERED:**

Defendant's 12(c) Motion for Judgment on the Pleadings (Doc. #15) is **GRANTED.**  The Clerk shall enter Judgment on the pleadings

dismissing the Complaint against Stuart C. Irby Company with prejudice, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __31st__ day of March, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record